UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ANN COLE-HATCHARD, *et al.*,

                Plaintiffs,

    v.

COUNTY OF ROCKLAND and
KATHLEEN TOWER-BERNSTEIN, in her
individual capacity,

                Defendants.

No. 17-CV-2573 (KMK)

OPINION & ORDER

Appearances:

Russell G. Wheeler, Esq.
Charny & Wheeler
Rhinebeck, NY
*Counsel for Plaintiff*

Charlotte R. Ramsey, Esq.
Thomas E. Humbach, Esq.
Rockland County Department of Law
New City, NY
*Counsel for Defendants*

Larraine S. Feiden, Esq.
Feiden Law Firm
New City, NY
*Counsel for Defendants*

KENNETH M. KARAS, United States District Judge:

       Employees of the Rockland County Probation Department ("Employee Plaintiffs") and

their labor organization, Civil Service Association, Inc., Local 1000 AFSCME, AFL-CIO,

Rockland County Local 844, County of Rockland Unit 8350 ("CSEA") (collectively,

"Plaintiffs"), bring this Action, pursuant to 42 U.S.C. § 1983, against Rockland County and

Kathleen Tower-Bernstein, the County's Director of Probation ("Tower-Bernstein")

(collectively, "Defendants").[1] Plaintiffs allege that Defendants violated their rights under the First and Fourteenth Amendments by retaliating against them for issuing a letter to the Rockland County Legislature raising concerns about a proposed relocation of the Probation Department. Before the Court is Defendants' Motion for Summary Judgment (the "Motion"). (*See* Not. of Mot. (Dkt. No. 34).)

For the following reasons, the Motion is denied.

## I. Background

### A. Factual Background

The following facts are taken from the Parties' statements pursuant to Local Civil Rule 56.1, (Defs.' Rule 56.1 Statement ("Defs.' 56.1") (Dkt. No. 37); Pls.' Rule 56.1 Statement ("Pls.' 56.1") (Dkt. No. 46)), as well as the admissible evidence submitted by the Parties. The facts are recounted "in the light most favorable to" Plaintiffs, the non-movants. *Wandering Dago, Inc. v. Destito*, 879 F.3d 20, 30 (2d Cir. 2018) (citation and quotation marks omitted).[2] The facts as described below are in dispute only to the extent indicated.

---

[1] The Employee Plaintiffs are: Ann Cole-Hatchard, Laureen Connelly, Donna Delarm, Jill Donovan, Jean Freer, Stefanie Gaudelli, Eleanor Gold, Grace Henriquez, Marion Leavey, Margaret Mackey, Diane Reeves, Christina Sagaria, Erica Salerno, Carol Schuler, Antoinette White, and Deborah Whittaker. On February 13, 2018, three others — Heather Bennett, William Bennett, and Andrew Schwartz — were dismissed as Plaintiffs pursuant to Fed. R. Civ. P. 41(a)(1)(A)(ii). (*See* Dkt. No. 24.)

[2] Local Civil Rule 56.1(a) requires the moving party to submit a "short and concise statement, in numbered paragraphs, of the material facts as to which the moving party contends there is no genuine issue to be tried." The nonmoving party must then submit "a correspondingly numbered paragraph responding to each numbered paragraph in the statement of the moving party, and if necessary, additional paragraphs containing a separate, short[,] and concise statement of additional material facts as to which it is contended that there exists a genuine issue to be tried." Local Civ. R. 56.1(b). "If the opposing party . . . fails to controvert a fact set forth in the movant's Rule 56.1 statement, that fact will be deemed admitted pursuant to the local rule." *Baity v. Kralik*, 51 F. Supp. 3d 414, 418 (S.D.N.Y. 2014) (citation and quotation marks omitted); *see also T.Y. v. N.Y.C. Dep't of Educ.*, 584 F.3d 412, 418 (2d Cir. 2009) (same).

Employee Plaintiffs were, at all relevant times, probation officers, senior probation officers, principal clerk typists, and data entry professionals employed by Rockland County's Probation Department. (Defs.' 56.1 ¶¶ 1–17.) In the spring of 2016, Rockland County considered relocating the Probation Department from New City, New York to Pomona, New York. (*Id.* ¶ 21.) On June 9, 2016, Employee Plaintiffs signed a letter (the "June 2016 Letter") articulating several concerns regarding the proposed relocation. (*Id.* ¶ 22; Decl. of Larrain S. Feiden, Esq. in Supp. of Mot. ("Feiden Decl.") Ex. 8 (June 2016 Letter) (Dkt. No. 35).) The June 2016 Letter, which is addressed to "Members of the Rockland County Legislature," states:

> Numerous concerns regarding this proposed move have been voiced by probation staff over and over again since the announcement of this move. . . . This letter serves as our formal request for relief, in the form of an opportunity to speak with the Rockland County Legislature at their next meeting. The following is a brief summary of what we, the undersigned [Employee Plaintiffs], believe are the crucial issues to be addressed immediately:

> [1] The proposed relocation of some of the probation department . . . is actually further dismantling of a department that is already operating significantly understaffed and ill-equipped to meet the needs of the population it serves. . . . To move parts of our department . . . has a detrimental effect on our ability to gather information and supporting documents from each other.

> [2] It is unrealistic and a 'set up for failure' to expect that [criminal] defendants, who often have trouble reporting to our current offices . . . due to transportation limitations and resources, will be able to report to the remote [proposed relocation site] as directed. This in turn will likely result in increased cases of defendants who go missing from our supervision and increased violations of probation, once again stretching thin our limited resources and taking time away from our mandate to actually interact and supervise these individuals.

> [3] The move . . . will distance and isolate our department from agencies we work closely with on a daily basis, including the county courts, Clarkstown Justice Court, the Office of the Public Defender, the Rockland County District Attorney's Office[,] and the Rockland County Correctional Facility.

> [4] As has been documented . . . [s]afety and security is a major concern of probation staff. . . . [O]ur offices are [currently] located in an active, populated building with the Rockland County Sheriff's Office a few thousand feet from our location . . . [,] [which is] regularly called upon to assist us within minutes of our

call for help. The relocation . . . clearly impacts a realistic response time. [The relocation building contains] cavernous, unmanned, isolated hallways [that] offer[] prime opportunity for assaults and hidden attacks. . . . The property is desolate. . . . [S]ignificant concern is raised about employees walking alone, in the dark, to distant parking areas.

[5] . . . [S]plitting our department into two separate locations will become a clerical/record-keeping nightmare. . . . Expecting clients to be supervised in one location and travel to another location is unrealistic and will likely result in the loss of revenue. . . .

[6] . . . We can only hope that the condition of the [relocation] offices and hallways, which are dirty, smell of mold and are clearly unhygienic, would greatly improve before there is even a thought of placing personnel in the area.

Finally, we would like those reviewing this letter to consider the following:

The [Probation Department] provides crucial roles in the daily operation of the court system here in the county. We also provide daily assistance to all segments of our population including the offenders we supervise . . . , the juveniles we monitor . . . , those under investigation for pre-sentence matters, [and] victims of domestic violence . . . . We have long served as an unrecognized and under appreciated agency when compared to the respect and attention other law enforcement entities often receive. The undersigned [Employee Plaintiffs] request that the[se] . . . points be given the careful consideration and well deserved respect before further plans are made to relocate parts of the department . . . .

(June 2016 Letter 1–2 (emphasis removed throughout).) In addition to being addressed to the Rockland County Legislature, the June 2016 Letter was copied and delivered to Tower-Bernstein, the County's Director of Probation, as well as several Rockland County officials, including the county executive, the county sheriff, several county and local judges, the public defender's office, and the district attorney's office. (Defs.' 56.1 ¶¶ 20, 26; June 2016 Letter 2–3.) However, the Letter was "not provided to any media source" or "posted to or shared on any social media sites." (Defs.' 56.1 ¶ 27.)

On June 21, 2016, Tower-Bernstein directed all Probation Department employees to attend one of two mandatory staff meetings scheduled for June 21 and June 22, 2016. (*Id.* ¶ 28.) At the meetings, Tower-Bernstein stated that the Probation Department had decided not to

proceed with the proposed relocation, but that the decision was not due to the June 2016 Letter. (*Id.* ¶ 31.) She further stated "that the individuals who signed" the June 2016 Letter — that is, Employee Plaintiffs — "had gone outside the chain of command for the department, which they should not have done[,] . . . that those actions reflected poorly on the [department] and upon her," and that "any future public speech on the issue of the planned relocation . . . could result in the imposition of disciplinary action, up to and including termination." (*Id.* ¶¶ 29–30.) Finally, Tower-Bernstein "stated that any probationary employees who signed" the June 2016 Letter "could be dismissed from service." (*Id.* ¶ 30.)

Also on June 21, 2016, Tower-Bernstein wrote and sent each Employee Plaintiff an identical "Memorandum of Warning." (*Id.* ¶ 32; Decl. of Russell G. Wheeler, Esq. in Opp'n to Mot. ("Wheeler Decl.") Ex. S ("Tower-Bernstein Dep.") 67 (Dkt. No. 41).) The Memorandum of Warning, which was "prepared in response" to the June 2016 Letter, states:

> [A]uthority to manage the Rockland County workforce, including location of departments rests solely with the County Executive. Authority to speak on behalf of individual departments rests with the appointing authority, in conjunction with the Executive's office. By submitting a letter as "members of the Rockland County Department of Probation", [sic] you have demonstrated disregard for chain of command, a disrespect for the Office of the County Executive and an ignorance of the potential repercussions of your action, including political, economic and public perception.
>
> You are advised that further communication of this nature may result in disciplinary action taken against you.

(Feiden Decl. Ex. 9 (Memorandum of Warning).) The Parties agree that the Memorandum of Warning "did not require [Employee Plaintiffs] to sign acknowledgement of receipt," that it "was not included in [Employee Plaintiffs'] personnel files" maintained by the County, and that it was not "forwarded to the CSEA" — Employee Plaintiffs' trade organization — "per the requirements of the" applicable collective bargaining agreement between the County and CSEA.

(Defs.' 56.1 ¶ 36; Pls.' 56.1 ¶ 36.)  However, while Defendants characterize the Memorandum of Warning as an "informal" reprimand, (Defs.' 56.1 ¶ 36), Plaintiffs reject that characterization, (Pls.' 56.1 ¶ 36).  Indeed, Plaintiffs further maintain that, when CSEA asked the County to rescind the Memorandum of Warning, the County refused and stated that "copies . . . will be retained by the Director as proof of progressive discipline," because "the CSEA contract permits an entire record of employment to be considered at a disciplinary proceeding with respect to the penalty to be imposed." (*Id.*)

B.  Procedural Background

Plaintiffs filed their initial Complaint on April 10, 2017.  (Dkt. No. 1.)  The instant Amended Complaint was filed on June 22, 2017.  (Am. Compl. (Dkt. No. 15).)  Defendants filed their Answer on September 20, 2017.  (Answer (Dkt. No. 18).)

On March 2, 2018, Defendants filed a letter seeking a conference in anticipation of moving for summary judgment.  (Dkt. No. 25.)  Plaintiffs filed a responsive letter on March 19, 2018.  (Dkt. No. 27.)  The Court held a conference on May 2, 2018 and adopted a briefing schedule.  (Dkt. No. 29.)  On July 23, 2018, Defendants filed the instant Motion for Summary Judgment and accompanying papers.  (Not. of Mot.; Feiden Decl.; Defs.' 56.1; Mem. of Law in Supp. of Mot. ("Defs.' Mem.") (Dkt. No. 38).)  Plaintiffs filed their response and accompanying papers on September 14, 2018.  (Wheeler Decl.; Decl. of Grace Henriquez in Opp'n to Mot. ("Henriquez Decl.") (Dkt. No. 42); Decl. of Laureen Connelly in Opp'n to Mot. ("Connelly Decl.") (Dkt. No. 43); Decl. of Diane Reeves in Opp'n to Mot. ("Reeves Decl.") (Dkt. No. 44); Decl. of Jill Donovan in Opp'n to Mot. ("Donovan Decl.") (Dkt. No. 45); Pls.' 56.1; Mem. of Law in Opp'n to Mot. ("Pls.' Mem.") (Dkt. No. 47).)  On October 4, 2018, Defendants filed their reply.  (Reply Mem. of Law in Supp. of Mot. ("Defs.' Reply") (Dkt. No. 48).)

A.  Standard of Review

Summary judgment is appropriate where the movant shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Psihoyos v. John Wiley & Sons, Inc.*, 748 F.3d 120, 123–24 (2d Cir. 2014) (same).  "In determining whether summary judgment is appropriate," a court must "construe the facts in the light most favorable to the non-moving party and . . . resolve all ambiguities and draw all reasonable inferences against the movant."  *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011) (quotation marks omitted).  "It is the movant's burden to show that no genuine factual dispute exists."  *Vt. Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004).

"However, when the burden of proof at trial would fall on the nonmoving party, it ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an essential element of the nonmovant's claim," in which case "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment."  *CILP Assocs., L.P. v. Pricewaterhouse Coopers LLP*, 735 F.3d 114, 123 (2d Cir. 2013) (citation, alteration, and quotation marks omitted).  Further, "[t]o survive a [summary judgment] motion . . . , [a nonmovant] need[s] to create more than a 'metaphysical' possibility that his allegations were correct; he need[s] to 'come forward with specific facts showing that there is a genuine issue for trial,'" *Wrobel v. County of Erie*, 692 F.3d 22, 30 (2d Cir. 2012) (emphasis omitted) (quoting *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986)), "and cannot rely on the mere allegations or denials contained in the pleadings," *Guardian Life Ins. Co. v. Gilmore*, 45 F. Supp. 3d 310, 322 (S.D.N.Y. 2014)

(quotation marks omitted); *see also Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009) ("When a motion for summary judgment is properly supported by documents or other evidentiary materials, the party opposing summary judgment may not merely rest on the allegations or denials of his pleading . . . .").

"On a motion for summary judgment, a fact is material if it might affect the outcome of the suit under the governing law." *Royal Crown Day Care LLC v. Dep't of Health & Mental Hygiene*, 746 F.3d 538, 544 (2d Cir. 2014) (quotation marks omitted). At this stage, "[t]he role of the court is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." *Brod*, 653 F.3d at 164 (quotation marks omitted). Thus, a court's goal should be "to isolate and dispose of factually unsupported claims." *Geneva Pharm. Tech. Corp. v. Barr Labs. Inc.*, 386 F.3d 485, 495 (2d Cir. 2004) (quotation marks omitted). However, a district court should consider "only evidence that would be admissible at trial." *Nora Beverages, Inc. v. Perrier Grp. of Am., Inc.*, 164 F.3d 736, 746 (2d Cir. 1998). "[W]here a party relies on affidavits or deposition testimony to establish facts, the statements 'must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.'" *DiStiso v. Cook*, 691 F.3d 226, 230 (2d Cir. 2012) (quoting Fed. R. Civ. P. 56(c)(4)).

B. Analysis

Plaintiffs allege that the June 2016 Letter constituted protected speech and that Defendants improperly retaliated against them, in violation of their rights under the First and Fourteenth Amendments, by issuing the Memorandum of Warning. (Am. Compl. ¶¶ 52–66, 67–84.) Defendants argue the June 2016 Letter was not protected speech and that Plaintiffs suffered no adverse employment action. (Defs.' Mem. 6–11.)

1.  Applicable Law

"It is by now well established both that a citizen, upon entering government service, by necessity must accept certain limitations on his or her freedom, and that upon accepting public employment, such employees do not check all of their First Amendment rights at the door." *Jackler v. Byrne*, 658 F.3d 225, 234 (2d Cir. 2011) (citations and quotation marks omitted). Indeed, "given that the core value protected by the Free Speech Clause of the First Amendment is the public interest in having free and unhindered debate on matters of public importance, the First Amendment protects a public employee's right, in certain circumstances, to speak as a citizen addressing matters of public concern." *Id.* (quotation marks and alterations omitted) (quoting *Pickering v. Bd. of Educ.*, 391 U.S. 563, 573 (1968) and *Garcetti v. Ceballos*, 547 U.S. 410, 417 (2006)).

Therefore, "[a] plaintiff asserting a First Amendment retaliation claim must establish that: (1) his speech or conduct was protected by the First Amendment; (2) the defendant took an adverse action against him; and (3) there was a causal connection between this adverse action and the protected speech." *Matthews v. City of New York*, 779 F.3d 167, 172 (2d Cir. 2015) (citation and quotation marks omitted).

As to the first element, "[f]or a public employee's speech to be protected by the First Amendment, the employee must be speaking as a citizen on a matter of public concern, rather than speaking pursuant to her official duties." *Butts v. N.Y.C. Dep't of Educ.*, No. 16-CV-5504, 2018 WL 4725263, at *16 (E.D.N.Y. Sept. 28, 2018) (citing *Garcetti*, 547 U.S. at 418). "If the employee 'either did not speak as a citizen or did not speak on a matter of public concern,' the speech is not protected." *Id.* (quoting *Sousa v. Roque*, 578 F.3d 164, 170 (2d Cir. 2009)); *see also Matthews*, 779 F.3d at 172 ("This step one inquiry in turn encompasses two separate

subquestions: (1) whether the subject of the employee's speech was a matter of public concern and (2) whether the employee spoke 'as a citizen' rather than solely as an employee. If the answer to either question is no, that is the end of the matter." (citation and quotation marks omitted)). *Id.* As to the second element, a plaintiff must show that the employer took an adverse employment action against the plaintiff that would "deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights." *Wrobel v. County of Erie*, 692 F.3d 22, 31 (2d Cir. 2012) (citation and quotation marks omitted). As to the third element, "[t]o demonstrate a causal connection a plaintiff must show that the protected speech was a substantial motivating factor in the adverse employment action." *Smith v. County of Suffolk*, 776 F.3d 114, 118 (2d Cir. 2015) (citation and quotation marks omitted). This may be done "either directly through a showing of retaliatory animus, or indirectly through a showing that the protected activity was followed closely by the adverse action." *Id.* (citation omitted).

### 2. Protected Speech

#### a. Speaking as a Private Citizen

There are "two relevant inquiries to determine whether a public employee speaks as a citizen: (1) whether the speech falls outside of the employee's official responsibilities, and (2) whether a civilian analogue exists." *Montero v. City of Yonkers*, 890 F.3d 386, 397 (2d Cir. 2018) (citation, quotations marks, and alterations omitted). "Although the presence or lack of a civilian analogue may be of some help in determining whether one spoke as a citizen, the critical question . . . is whether the speech at issue is itself ordinarily within the scope of an employee's duties." *Id.* (citing *Lane v. Franks*, 573 U.S. 228, 240 (2014)); *see also Butts*, 2018 WL 4725263, at *5 (noting that the second inquiry "is not dispositive" and "the first inquiry is the critical one" (citing *Montero*, 890 F.3d at 398)). Under the first inquiry, "[w]hat matters is not

whether the speech was *related* to the employee's official duties, but rather whether it was *pursuant* to her official duties; if it was, the employee was speaking as an employee, not a citizen." *Butts*, 2018 WL 4725263, at *5 (citing *Montero*, 890 F.3d at 398) (emphasis in original). Put differently, the "critical question . . . is whether the speech at issue is itself ordinarily within the scope of an employee's duties, not whether it merely concerns those duties." *Lane*, 573 U.S. at 240. This "inquiry is a practical one." *Garcetti*, 547 U.S. at 424. "[S]peech can be 'pursuant to' a public employee's official job duties even though it is not required by, or included in, the employee's job description, or in response to a request by the employer." *Weintraub v. Bd. of Educ. of City Sch. Dist. of City of N.Y.*, 593 F.3d 196, 203 (2d Cir. 2010). "Ultimately, the question . . . is whether the employee's speech was part-and-parcel of [his] concerns about his ability to properly execute his duties." *Montero*, 890 F.3d at 398 (citation, quotation marks, and alterations omitted).

Here, the only asserted instance of protected speech is the June 2016 Letter. Defendants argue that Employee Plaintiffs, in issuing the Letter, did not speak as private citizens because the Letter was issued "pursuant to [Employee Plaintiffs'] official duties." (Defs.' Mem. 6 (quoting *Garcetti*, 547 U.S. at 424).) In Defendants' view, the June 2016 Letter's "primary focus" was on Employee Plaintiffs' "beliefs that the proposed relocation would negatively impact the departmental services to the detriment of those it directly services." (*Id.* at 7.) That is, the "objections to the proposed relocation [were] 'part and parcel' of [Employee Plaintiffs'] concerns about proper execution of their duties," (*id.*), and "related directly to their responsibilities in the Department of Probation," (*id.* at 8 (citing Feiden Decl. Ex. 13 ("Cole-Hatchard Dep.") 17–18; *id.* Ex. 14 ("Connelly Dep.") 18–19; *id.* Ex. 15 ("Guadelli Dep.") 12–13; *id.* Ex. 18 ("Delarm Dep.") 16–17)). Further, Defendants argue that the June 2016 Letter

constituted an instance of "governmental employees looking to take their complaints up the chain of command." (*Id.* at 2; *see also id.* at 8 (same).) Finally, Defendants argue that at least one Employee Plaintiff's deposition testimony indicated that the June 2016 Letter was "written on behalf of the probation staff," (Cole-Hatchard Dep. 28), thus raising the question whether Employee Plaintiffs themselves intended to speak as private citizens in writing the letter.

A reasonable jury, however, could interpret the June 2016 Letter differently. The Letter raises several practical concerns relating to the proposed relocation: (1) that understaffing will harm Employee Plaintiffs' "ability to gather information . . . from each other"; (2) that criminal defendants served by Employee Plaintiffs will not be able to report to the Probation Department, thus leading to "increased violations of probation" and "taking time away from [Employee Plaintiffs'] mandate to actually interact and supervise these individuals"; (3) that the relocation will physically separate the Probation Department from partner governmental agencies; (4) that the relocation will create safety and security problems for Employee Plaintiffs; (5) that the relocation will create administrative and clerical problems for the Probation Department, thus producing a loss of revenue; and (6) that the relocation site is "dirty" and "unhygienic." (June 2016 Letter 1–2.) The June 2016 Letter may thus reasonably be read as a formal public comment on a proposed Probation Department policy — the proposed splitting and relocation of the Department — that articulates specific concerns with that policy. As Plaintiffs argue, Employee Plaintiffs are not policymakers. (*See* Pls.' Mem. 5.) The principal job functions of Employee Plaintiffs involve the supervision of probationers, the completion of pre-plea and pre-sentence reports, testifying in court, monitoring court orders for compliance, supervising and assigning work to other probation officers, and creating and maintaining departmental database records and other documents. (*See id.* at 16; *see also* Reeves Decl. ¶¶ 4–6; Connelly Decl. ¶¶ 4–

5; Henriquez Decl. ¶¶ 5–6; Donovan Decl. ¶¶ 6–7.)  Their job descriptions do not include formulating or commenting on proposed departmental policies.  (*See* Feiden Decl. Exs. 1–7 (relevant job descriptions).)  Nor does the record indicate that, as a "practical reality of their everyday work," *Matthews*, 779 F.3d at 174, Employee Plaintiffs did in fact play a role in formulating or commenting on departmental policies.  (*See* Henriquez Decl. ¶¶ 7–11; Connelly Decl. ¶¶ 6–8; Reeves Decl. ¶¶ 5–7; Donovan Decl. ¶ 8.)  To the contrary, as the Memorandum of Warning states:

> [Employee Plaintiffs] are reminded that authority to manage the Rockland County workforce, including location of departments, rests solely with the County Executive.  Authority to speak on behalf of individual departments rests with the appointing authority, in conjunction with the Executive office.  By submitting [the June 2016 Letter] . . . , [Employee Plaintiffs] have demonstrated a disregard for [the] chain of command . . . .

(Memorandum of Warning.)  In other words, although the June 2016 Letter clearly "relates to" and "concerns" Employee Plaintiffs' duties as probation officers, *Montero*, 890 F.3d at 398, and likely includes information that "may have touched on matters that [Employee Plaintiffs] learned through the course of [their] employment" with the Probation Department, *id.* at 389, that is not the standard, *see Lane*, 573 U.S. at 240 (noting that the "critical question . . . is whether the speech at issue is itself ordinarily *within the scope* of an employee's duties, not whether it merely *concerns* those duties" (emphasis added)).  In issuing the June 2016 Letter, Employee Plaintiffs, far from acting "within the scope" of or "pursuant to" their duties, *Montero*, 890 F.3d at 398, acted outside of, and indeed contrary to, those duties.  *See Matthews*, 779 F.3d at 174–75 (holding that a police officer's job was as a line officer rather than as a departmental policymaker, his complaints regarding "broad policy issues" were not an integral part of his day-to-day job); *Seung-Yong Ok v. N.Y.C. Dep't of Educ.*, No. 18-CV-392, 2018 WL 2121562, at *3 (E.D.N.Y. May 8, 2018) (holding that the plaintiff spoke as a private citizen where his speech

"concerned his grading duties as a teacher, [but] were not obviously within the scope of his duties as a teacher"); *cf. Weintraub*, 593 F.3d at 203 (holding the plaintiff did not speak as a private citizen where the speech was a "prerequisite" that served as the "means to fulfill" the requirements of his employment); *Alvarez v. Staple*, 345 F. Supp. 3d 320, 330–31 (S.D.N.Y. Oct. 26, 2018) (holding that, because a public school principal's job responsibilities were "very broad" — "she was responsible for having a 360 [degree] view of everything that happens in the building or in her school," served as a "security liaison," "sat on the building safety committee," and "attended weekly building principal meetings" — her statements "of concern about school safety . . . all fell squarely within her job duties").

It thus cannot be said that the June 2016 Letter was "undertaken in the course of [Employee Plaintiffs'] performing" their responsibilities as probation officers. *Weintraub*, 593 F.3d at 203. Nor can it be said that the June 2016 Letter is merely an example of taking an issue up the "chain of command to find someone who will take it seriously." *Ross v. Breslin*, 693 F.3d 300, 307 (2d Cir. 2012). To the contrary, the Rockland County Legislature — to whom Employee Plaintiffs addressed the letter — is a governmental branch separate from the Rockland County Executive and thus *outside* Employee Plaintiffs' chain of command. (*See* Tower-Bernstein Dep. 69 ("[W]e [i.e., the Probation Department] report directly to the county executive.").) *See also Kuczinski v. City of New York*, 352 F. Supp. 3d 314, 322 (S.D.N.Y. 2019) ("[I]f the employee goes outside of the established institutional channels in order to express a complaint or concern, the employee is speaking as a citizen and the speech is protected by the First Amendment." (citing *Garcetti*, 547 U.S. at 419–21 and *Weintraub*, 593 F.3d at 198)); *cf. Cohn v. Dep't of Educ. of City of N.Y.*, 697 F. App'x 98, 99 (2d Cir. 2017) (holding that a teacher who "raised his concerns beyond his immediate supervisors (the principal and assistant principal)

by writing to state educational officials" constituted "taking a complaint up the chain of command," which "does not, without more, transform speech into protected speech" (citations, alterations, and quotation marks omitted)).

As to the second inquiry — "whether a civilian analogue exists," *Montero*, 890 F.3d at 397 — the question is whether the alleged speech was made through "channels available to citizens generally," *Matthews*, 779 F.3d at 174. There is little question here, and Defendants do not argue to the contrary, that the June 2016 Letter is functionally identical to a "complaint to an elected representative," which the Second Circuit has held is, of course, a "channel of discourse available to non-employee citizens." *Weintraub*, 593 F.3d at 204.

In sum, drawing all inferences in favor of Employee Plaintiffs, *see Brod*, 653 F.3d at 164, the record does not establish that the June 2016 Letter was issued "pursuant to" Employee Plaintiffs' job duties. *Montero*, 890 F.3d at 398. To the contrary, a reasonable jury could conclude that, in issuing the June 2016 Letter, for which there is a clear civilian analogue, Employee Plaintiffs addressed matters that were not "within the scope of [their] duties," and thus spoke as private citizens. *Id.* (quoting *Lane*, 573 U.S. at 240); *see also Sugar v. Greenburgh Eleven Union Free Sch. Dist.*, No. 18-CV-67, 2018 WL 6830865, at *7 (S.D.N.Y. Dec. 28, 2018) (holding that the plaintiff, a long-term substitute teacher, "plausibly allege[d] that when she called the police to report Student X's conduct, she was not 'performing the tasks she was paid to perform.'" (alterations omitted) (quoting *Woodlock v. Orange Ulster B.O.C.E.S.*, 281 F. App'x 66, 68 (2d Cir. 2008)); *Butts*, 2018 WL 4725263, at *6 (holding that a paraprofessional working with special education students spoke as a private citizen when she made statements to union representative and school administrator that a school policy violated the education plans and rights of special education students because her job responsibilities "did not include

commenting on the school administration's violation of its special-education students' rights,"
and her statements were thus "related, but not pursuant, to her duties"); *Raymond v. City of New
York*, 317 F. Supp. 3d 746, 776, 779, 781–83 (S.D.N.Y. 2018) (holding that police officers'
statements made through internal departmental channels regarding the illegality of a law
enforcement quota system was not within the scope of a police officer's duties and was thus
speech made as a private citizen, even though there was no civilian analogue); *cf. Blue v. City of
New Haven*, No. 16-CV-1411, 2019 WL 399904, at *7 (D. Conn. Jan. 31, 2019) (holding that the
plaintiff did not speak as a private citizen where "the record makes clear that the speech . . . is
exactly the type of speech ordinarily within the scope of [the plaintiff's] duties").

### b. Matter of Public Concern

That Employee Plaintiffs, in issuing the June 2016 Letter, spoke as private citizens "does
not necessarily" mean "that [their] speech was constitutionally protected." *Montero*, 890 F.3d at
399. Employee Plaintiffs "must also demonstrate that the speech at issue was on a matter of
public concern." *Id.* (citing *Garcetti*, 547 U.S. at 418). "Speech involves matters of public
concern when it can be fairly considered as relating to any matter of political, social, or other
concern to the community, or when it is a subject of legitimate news interest; that is, a subject of
general interest and of value and concern to the public." *Lane*, 573 U.S. at 241 (citation and
quotation marks omitted). Speech does not involve a matter of public concern where it
"concerns essentially personal grievances" or where "it has no practical significance to the
general public." *Colvin v. Keen*, 900 F.3d 63, 75 (2d Cir. 2018) (citations and quotation marks
omitted). The inquiry turns on the "content, form, and context" of the speech. *Id.* (quoting
*Connick v. Myers*, 461 U.S. 138, 147–48 (1983)).

There is little doubt that, viewing the evidence in the light most favorable to Plaintiffs, *see Brod*, 653 F.3d at 164, the June 2016 Letter touched, at least in significant part, on a matter of public concern. Most significantly, the Letter stated:

> It is unrealistic and a 'set up for failure' to expect that [criminal] defendants, who often have trouble reporting to our current offices . . . due to transportation limitations and resources, will be able to report to the remote [proposed relocation site] as directed. This in turn will likely result in increased cases of defendants who go missing from our supervision and increased violations of probation, once again stretching thin our limited resources and taking time away from our mandate to actually interact and supervise these individuals.

(June 2016 Letter 1.) Beyond this concern for the welfare of criminal defendants and probationers, the June 2016 Letter raised efficiency, efficacy, safety, health, fiscal, and related concerns over the proposed relocation of the Probation Department. (*Id.* at 1–2.) It cannot be said that these issues are "essentially personal grievances" or that they have "no practical significance to the general public." *Colvin*, 900 F.3d at 75. To the contrary, the June 2016 Letter can reasonably be read to raise issues with "a broader public purpose," *id.*, that are of "political, social, or other concern to the community," *Lane*, 573 U.S. at 241; *see also Montero*, 890 F.3d at 400 (holding that police officer's "union remarks expressing opposition to . . . personnel cuts . . . involved matters of public concern," because the police officer believed they were "bad for the police force, bad for members of the [union,] and bad for the community"). Even if the June 2016 Letter was motivated in part by Employee Plaintiffs' concern about how the proposed relocation would affect them personally, this would not preclude a finding that the June 2016 Letter addressed matters of public concern. *See Montero*, 890 F.3d at 401 (holding that a police officer's remarks criticizing police commissioner, with whom he had a personal feud, can be a matter of public concern if the remarks were not "solely calculated to redress . . . personal grievances" (citation and quotation marks omitted)); *Golodner v. Berliner*, 770 F.3d

196, 203 (2d Cir. 2014) (stating that "an individual motivated by a personal grievance can simultaneously speak on a matter affecting the public at large"); *Dorcely v. Wyandanch Union Free Sch. Dist.*, 665 F. Supp. 2d 178, 206 (E.D.N.Y. 2009) ("The requirement is not that the plaintiff have absolutely no personal interest; rather, that personal interest may not be the overriding one.").

Defendants argue in response that Employee Plaintiffs "made no effort to inform the public of their[] concerns" regarding the proposed relocation, as the June 2016 Letter "was not disseminated" either to local media or social media. (Defs.' Mem. 2.) That appears to be true. Yet, Defendants do not explain what the question of media dissemination has to do with the question whether the Letter's subject matter addresses a "political, social, or other concern to the community." *Lane*, 573 U.S. at 241. To the extent dissemination is relevant to the question of Employee Plaintiffs' motives, the Second Circuit has instructed that "motive is a factor to consider but is not dispositive in determining whether . . . speech addresses a matter of public concern." *Golodner*, 770 F.3d at 202. Here, the record also reflects that the Letter was addressed to the Rockland County Legislature, copied to numerous local officials, including Tower-Bernstein, the county executive, the county sheriff, several county and local judges, the public defender's office, and the district attorney's office. (June 2016 Letter 2–3.) Further, the Letter requested "an opportunity to speak with" the legislature, and emphasized that the Probation Department is "an unrecognized and under appreciated agency" whose concerns merit "careful consideration and well deserved respect." (*Id.*) The June 2016 Letter is thus reasonably seen as a document publicly advocating for the needs and concerns of Employee Plaintiffs and the public and sent to those people with the perceived ability to act on those concerns.

In sum, drawing all inferences in favor of Plaintiffs, *see Brod*, 653 F.3d at 164, the June 2016 letter is "fairly considered" as addressing matters of "political, social, or other concern to the community." *Butts*, 2018 WL 47252863, at *7 (citing *Lane*, 573 U.S. at 241). Accordingly, the Court proceeds to consider whether there is evidence that Defendants took an adverse employment action against Employee Plaintiffs.

### 3. Adverse Employment Action

In the context of a First Amendment retaliation claim, an "adverse employment action" is any "materially adverse" action, that is, any action that "'well might have dissuaded a reasonable worker [from asserting her First Amendment-protected rights].'" *Zelnik v. Fashion Inst. of Tech.*, 464 F.3d 217, 227 (2d Cir. 2006) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006)). "[P]etty slights or minor annoyances that often take place at work and that all employees experience" do not constitute actionable retaliation. *White*, 548 U.S. at 68. "Material adversity is to be determined objectively, based on the reactions of a reasonable employee." *Tepperwien v. Entergy Nuclear Opers., Inc.*, 663 F.3d 556, 568 (2d Cir. 2011). This "is a heavily fact-specific, contextual determination." *Zelnik*, 464 F.3d at 226 (citation omitted). Further, "[i]n determining whether conduct amounts to an adverse employment action, the alleged acts of retaliation need to be considered both separately and in the aggregate, as even minor acts of retaliation can be sufficiently substantial in gross as to be actionable." *Hicks v. Baines*, 593 F.3d 159, 165 (2d Cir. 2010) (quotation marks omitted).

The Memorandum of Warning written by Tower-Bernstein and issued to each Employee Plaintiff constitutes materially adverse action. The Second Circuit has recognized that a "[a] formal reprimand issued by an employer is not a 'petty slight,' 'minor annoyance,' or 'trivial' punishment," because "it can reduce an employee's likelihood of receiving future bonuses,

raises, and promotions, and it may lead the employee to believe (correctly or not) that his job is in jeopardy." *Millea v. Metro-North R.R. Co.*, 658 F.3d 154, 165 (2d Cir. 2011); *see also Lawrence v. Mehlman*, 389 F. App'x 54, 56 (2d Cir. 2010) ("Reprimands or negative evaluation letters may, in some circumstances, constitute adverse employment action, and whether they do so is typically a question of fact for the jury." (citations omitted)).

Seeking to avoid *Millea*, Defendants argue that the Memorandum of Warning was an "informal" reprimand, as no Employee Plaintiff was asked to acknowledge receipt of the Memorandum, nor was the Memorandum placed in an any Employee Plaintiff's permanent personnel file. (Defs.' Mem. 4; Tower-Bernstein Dep. 90; Wheeler Decl. Ex. U ("Fortunato Letter").) Indeed, it is true that the Memorandum did not itself state "that it constitutes an official formal notice of reprimand or discipline" and did not "reference any of [the County's] employee guidelines." *Bean v. Davita, Inc.*, No. 11-CV-1737, 2014 WL 10518556, at *5 (D. Conn. Sept. 30, 2014). Yet, the record shows that the Memorandum was written by Tower-Bernstein — the departmental director responsibility for personnel decisions — on departmental letterhead, and delivered to Employee Plaintiffs' desks and inboxes during business hours. (*See* Memorandum of Warning; Tower-Bernstein Dep. 67; Cole-Hatchard Dep. 15.) Further, the content and tone of the Memorandum suggests a degree of formality: it was "prepared in response" to the June 2016 Letter and "advised" Employee Plaintiffs "that further communication of this nature may result in disciplinary action taken against [them]." (Memorandum of Warning.) The Memorandum can thus fairly be read as explicitly threatening Employee Plaintiffs with disciplinary action. *See McGuinn v. Smith*, No. 11-CV-4761, 2015 WL 12731755, at *6 (S.D.N.Y. Aug. 28, 2015) (noting that even "an implicit threat of discipline might in some situations deter an individual of ordinary firmness from the exercise of his or her

constitutional rights").  Indeed, the record shows that, when CSEA asked the County to "rescind[]" the Memorandum, (*see* Wheeler Decl. Ex. T), the County refused and stated that "copies . . . will be retained by the Director as proof of progressive discipline," because the "CSEA contract permits an entire record of employment to be considered at a disciplinary proceeding with respect to the penalty to be imposed," (Pls.' 56.1 ¶ 36; Tower-Bernstein Dep. 91–97; Fortunato Letter).

Defendants also argue that, since the issuance of the Memorandum, no Plaintiff has been "terminated, demoted, reassigned to a new department, received a reduction in pay[,] or even received a negative job evaluation."  (Defs.' Mem. 4.)  Yet, a formal reprimand may be materially adverse "even when . . . [it] does not directly or immediately result in any loss of wages or benefits, and does not remain in the employment file permanently."  *Millea*, 658 F.3d at 165.  Further, the record shows that, after the issuance of the Memorandum, Employee Plaintiffs "had to move out of [their] office," which some Employee Plaintiffs felt was retaliatory, one Employee Plaintiff's workload unexpectedly increased to an unmanageable level, and another Employee Plaintiff's request for a summer schedule change to accommodate her school-age daughter's schedule was unexpectedly rejected, when it had previously been accepted.  (*See* Cole-Hatchard Dep. 31–33; Guadelli Dep. 37–38; Feiden Decl. Ex. 16 ("Mackey Dep.") 31–33; Feiden Decl. Ex. 11 ("Leavey Dep.") 24.)  *See also Hicks*, 593 F.3d at 165 (finding that a schedule change constitutes a material adverse action if the change makes a meaningful difference to the particular employee, for example a young mother with school-age children); *Corrado v. N.Y. State Unified Court Sys.*, No. 12-CV-1748, 2014 WL 4626234, at *11 (E.D.N.Y. Sept. 15, 2014) (finding that increased supervision, unreasonable workloads, required counseling sessions, and denial of transfer, in the aggregate, constituted materially adverse action), *aff'd*, 698 F. App'x 36 (2d Cir. 2017); *cf. Vosburgh v. Burnt Hills – Ballston Lake Cent. Sch. Dist.*, No. 18-CV-1003, 2019 WL 315054, at *13 (N.D.N.Y. Jan. 24, 2019) (holding no adverse

employment action where "there are no allegations that [the] [p]laintiffs' working environment changed after they initiated this action").

Finally, given that the adverse action inquiry is in part a "contextual determination," *Zelnik*, 464 F.3d at 226, the Court notes the Memorandum was issued on June 21, 2016, the same day as the first of the two mandatory staff meetings held by Tower-Bernstein regarding the June 2016 Letter. (Defs.' 56.1 ¶ 28.) At those meetings, Tower Bernstein stated that Employee Plaintiffs "had gone outside the chain of command for the department, which they should not have done[,] . . . that those actions reflected poorly on the [department] and upon her," and that "any future public speech on the issue of the planned relocation . . . could result in the imposition of disciplinary action, up to and including termination." (*Id.* ¶¶ 29–30.) The record reflects that at least some Employee Plaintiffs perceived these threats as serious and, more broadly, felt that the tone of the meeting was hostile. (*See* Leavey Dep. 25–26; Cole-Hatchard Dep. 29; Connelly Dep. 34–36; Mackey Dep. 24–26; Wheeler Decl. Ex. L ("Sagaria Dep.") 23–24, 32.)

In sum, a reasonable jury could conclude that the issuance of the Memorandum of Warning — particularly when considered in the context of Tower-Bernstein's mandatory meetings and the County's subsequent refusal to rescind the Memorandum — constituted an adverse employment action. *See Stern v. State Univ. of N.Y.*, No. 16-CV-5588, 2018 WL 4863588, at *16 (E.D.N.Y. Sept. 30, 2018) ("[T]he reprimands written by [the employer] to [the plaintiff] with senior management copied . . . constitute materially adverse employment actions for retaliation purposes."); *Chioke v. Dep't of Educ. of City of N.Y.*, No. 15-CV-1845, 2018 WL 3118268, at *13 (E.D.N.Y. June 25, 2018) (holding that a "warning" letter placed in employee's personnel file and which "formally admonished her for arriving late to work" can constitute materially adverse action); *Saber v. N.Y. State Dep't of Fin. Servs.*, No. 15-CV-5944, 2017 WL

985889, at *12 (S.D.N.Y. Mar. 10, 2017) ("A reasonable jury could find that a negative performance review and a notice of discipline threatening a twenty-day suspension are sufficient to dissuade a reasonable worker from making or supporting a charge of discrimination."); *Mazyck v. Met. Transp. Auth.*, 893 F. Supp. 2d 574, 591–92 (S.D.N.Y. 2012) (holding that the issuance of a formal reprimand for tardiness was an adverse action); *White v. Dep't of Corr. Servs.*, 814 F. Supp. 2d 374, 389 (S.D.N.Y. 2011) (denying summary judgment where counseling memoranda, negative performance evaluation and notice of discipline in combination could constitute adverse employment action for purposes of retaliation).

## III. Conclusion

For the reasons stated above, Defendants' Motion for Summary Judgment is denied. The Clerk is respectfully directed to terminate the pending Motion. (*See* Dkt. No. 34.)

The Court will hold a Status Conference on April 24, 2019, at 2:30 p.m.

SO ORDERED.

Dated: March 21, 2019
       White Plains, New York

KENNETH M. KARAS
United States District Judge